McLAREN et al. v. STANDARD OIL CO. OF NEW YORK.

(District Court, S. D. New York. July 16, 1903.)

1. ADMIRALTY—DELIVERY OF CARGO—SHORTAGE—EVIDENCE.

A ship received 151,886 cases of petroleum to be transported to Japan. The consignee only acknowledged receipt of 151,661. The cargo was tallied out of the steamer by her second and third officers and three of her sailors, whose tally showed a shortage of 753 cases, which was manifestly incorrect. When the discrepancy was discovered, the master requested a recount from the consignee, which was declined, on the ground that it could not be conveniently had, and in the meantime part of the cargo was reshipped. It was shown that no part of the cargo was used on the steamer, and there was no opportunity for ab-straction or loss during the voyage, and that all of the cargo received was delivered except six cases, purchased for the steamer's use. *Held*, in the absence of other evidence, such facts established a prima facie case of delivery of the entire cargo.

Convers & Kirlin, for libellants.
Wing, Putnam & Burlingham, for respondent.

ADAMS, District Judge. This action was brought by the libel-lants, the owners of the steamship Strathford, to recover from the respondent, the sum of $322.98, which it withheld from the freight on a cargo of petroleum, shipped from Philadelphia to Nagasaki, Japan, on the 15th of June, 1901, and consigned to the respondent's agent. The quantity shipped was 151,886 cases but the consignee only ac-knowledged the receipt of 151,661 cases, and the value of the 225 missing cases is the sum in controversy.

By the terms of the charter party, the steamer was entitled to a berth in discharging where she could lie afloat and in safety. Under this provision, she was discharged at Nagasaki by means of lighters, which were employed by the consignee.

The cargo was tallied out of the steamer into the lighters by the

2nd and 3rd officers of the steamer and 3 of her sailors. At the end of the discharge, according to such tally, the quantity was apparently 753 cases short but it was not actually so, as the consignee acknowledged the receipt of all but 225 cases. It is evident that the steamer's tally is of no importance and there is no reliable evidence as to the quantity that went over her side and was delivered into the lighters. There is no evidence whatever, apart from the consignee's acknowledgment, of the quantity delivered by the lighters. It is shown by the libellants that no cargo was used on the steamer and that there was no opportunity for abstraction or loss during the voyage. There is some positive, and apparently straightforward, general testimony on the part of the steamer that all of the cargo received, excepting 6 cases purchased at Nagasaki for the steamer's use, was delivered to the lighters. When the discrepancy was discovered, the master of the steamer asked the consignee for a recount at Nagasaki but it was not allowed on the ground that it could not conveniently be had. In the meantime, some part of the cargo had been reshipped by the consignee.

The respondent has offered no testimony with reference to the discharge but relies upon the absence of testimony on the part of the libellants to show the delivery of the quantity received on board.

The case is not free from doubt, but I consider that the libellants' testimony suffices to make out a prima facie case of delivery to the lighters, and, in the absence of any testimony to overcome it, there should be a decree for the libellants.